The next case today is Boston Bit Labs, Inc. v. Charles D. Baker, Appeal No. 20-2046. Attorney Randazza, please introduce yourself to begin. Good afternoon, Your Honor. My name is Mark Randazza. I am the Attorney General of Boston Bit Labs in the First Amendment case. This case is about whether the Executive can exercise unchecked power... Wait a minute. Is he not close enough to the mic? Because you're getting every other word. I think that's right. Lean in and project. Okay. I will lean in here a little deeper. Is that better, Your Honor? That's much better. Thank you. This is a case about whether the Executive can exercise unchecked power to infringe on the First Amendment... and then evade litigation over that misuse of power by simply using the same unchecked power... with no restrictions on that power ever coming into focus. Go ahead, Thompson. What is it your client wants? And why isn't this case absolutely, completely moot? Your Honor, I would direct you to the doctrine of voluntary cessation. That is the centerpiece of this appeal. And I would say that Executives around the country, most notably Governors Newsom and Cuomo... most famously employed the same strategy in cases that were reversed by the Supreme Court... infringing on civil liberties and then trying to claim they could not be held accountable... because they used the same unfettered discretion and unchecked power... to simply stop infringing the moment they forced citizens to take action. But isn't this case markedly different? As of June 15, the emergency declaration in Massachusetts has been terminated. Yes, Your Honor. There is no way that the Governor could impose any restrictions on businesses... absent new legislation from the Massachusetts Legislature. So you've got a standard where you've got to show this is reasonably likely to recur. Which would mean we'd have to speculate that it's reasonably likely... that the Legislature is going to grant emergency powers to the Governor again... and that the Governor, in reasonable likelihood, is going to exercise them... in a way contrary to the latest way he exercised them. Isn't that too much of a leap for mootness concerns? Your Honor, I disagree with you slightly on the standard. It is not that I need to show that, but to establish mootness... the defendant bears the heavy burden of showing there is no reasonable expectation. The question comes down the same way. Under the facts I've just given you, which I think are undisputed... how can there be a reasonable likelihood that this same restriction will be imposed? Still, by executive fiat, the Governor can simply declare a new state of emergency right now... with no legislative approval. Has the Governor ever done that? He did it last time with enabling legislation. Under the Derosiers case, the Government argued that... and it was held that under state law, the Governor had no restriction on declaring that. So the fact that the Governor has done it... I think is enough indication that the Governor may do it again. And thus, I don't think the defendant can meet the burden. I don't think giving us the burden is proper. For example, in Brash v. Newsom... said the defendant bears the heavy burden of showing there is no reasonable expectation. I think we have a reasonable... So the defendant argues that the Governor has terminated the executive order... The defendant points to the fact that there is no enabling legislation. You're quibbling with linguistics here. Well, that's largely what our craft is, Your Honor. But I would say that it doesn't matter. They can simply say there's no legislation, but they don't need it. There is nothing restricting his power. The fact that perhaps... Has he ever done it before? You still didn't answer Judge Selly's question. Is there something that has happened in the past... that would allow us to reasonably assume that this is likely to occur in the future? Well, he did it under 1950 legislation that was there in the event of a nuclear attack. That wasn't even what this legislation was for. Chapter 639 of the Acts of 1950 and Chapter 2A of Chapter 17 of the General Laws... remains there for him to use as he sees fit. So the fact that he did a... I mean, it's no other way to describe it except... a fiat restriction on First Amendment rights of my client... and then a fiat restriction of it... leaves it open that an additional fiat re-infringement will occur. They have not... In this case, in the case involving the Maine Governor... This very circuit said the Maine Governor has not denied... that she has the power or the inclination to do it again. You're seeking declaratory relief. What would you have us say? That if the Governor is to restrict my client's legitimate First Amendment rights here... he's going to have to do it subject to strict scrutiny. And he has not done that. Four minutes remaining. Under intermediate scrutiny. Your Honors, given that I have only four minutes left... I'd like to reserve some time for rebuttal. Fine. Dan. Thank you, Mr. Randazza, at this time. If you could mute your device. And Attorney Lightfoot, if you could introduce yourself on the record. And proceed. Attorney Randazza, please mute your camera as well. Good afternoon, Your Honors. Veronica Lightfoot on behalf of Governor Charles Baker. May it please the Court. This Court has not found that voluntary cessation exception... where the voluntary cessation has occurred for reasons unrelated to the litigation. Here, Order 69 is unrelated to the litigation. A review of COVID Order 69 shows that the Governor, in fact... issued the order that rescinded his emergency powers... because we have a free and available vaccine... 63% of our population fully vaccinated. Because we are in the phase of having our economy restored... through the Governor's four-phase plan. What about this Delta variant? Does that create a new circumstance that alters the situation here? The Delta variant could very well create a new circumstance. But it does not restore or save the claims of mootness here. Counsel, as I understand it... the original restriction that the Governor issued... said specifically it was pursuant to specific legislative authority, correct? That's correct, the Civil Defense Act. And that legislative authority no longer exists? That legislative authority was rescinded with COVID Order 69. A yes would have been just fine. Yes, yes. And has Governor Baker at any point, at any time... publicly or privately said that he intends to reimpose these restrictions... whether the legislature of Massachusetts authorizes it or not? I am not aware of that. So to answer your question directly... No. No. The answer is no, isn't it? The answer is no. And I would like to add that what the Governor has done... is gone to the legislature and said that there are certain transitional things... that need to be put in place... that would have certain emergency orders continue... such as being able to have remote access to public hearings... such as there being an expedited process for permits for outdoor dining. So in addition to the Governor not having stated... that he would reinstitute a state of emergency... and then re-implement, close down the economy... and then cause there to be a separation... because the point here is that the plaintiff is complaining... that he was not treated the same as the gaming floors of casinos. So we would have to have the gaming floors of casinos be permitted to open... and the arcades remain closed. That is Order 43 that was at issue here. And we are so far removed from that happening... with having had this rescission of the emergency powers... with having had in Order 69 the Governor stating... that he was going to allow the Commissioner of Public Health... to retain authority to implement this vaccination. I would like to direct the court to the town of Portsmouth v. Lewis. That is the case that governs here. In the town of Portsmouth v. Lewis... we had, as the panel knows, Judge Thompson and Judge Celia... having engaged in this case. We have what was the Rhode Island General Assembly... rescinding the toll provision. We have the court determining with the rescission of that toll provision... that there was no longer a case in controversy that remained. But we also have the court addressing voluntary cessation... and saying that it was inapplicable in that scenario as it is here. Specifically, we have the court saying that prior to the resolution of this appeal... the Governor has already acted. As I just explained in response to Judge Hawkins' question... the Governor has already acted here by going to the legislature... by rescinding the emergency powers that he himself defined as extraordinary... and by stating that now the Commissioner of Public Health... is vested with the authority to institute and issue orders... that would lead us on the continued path of recovery. And we also have a second point in the town of Portsmouth... where it says that the tolls had been dismantled. And with those tolls being dismantled... there was no need for an advisory opinion to be issued. Thank you for your response to my question. And I don't have any other questions. But your time isn't up yet. Well, I appreciate the court's question. And I will just add one statement and I will end. You will voluntarily cease. I will voluntarily cease. And it's somewhat related to the litigation. What I would like to state in conclusion is that... this court is obligated to follow the doctrine of constitutional avoidance. This court should not reach the constitutional issues here... because alternative grounds exist. And those grounds are in the town of Portsmouth, the ACLU. And I'll rest on my brief. I did have one additional question. I'm just trying to figure out your understanding of the plaintiff's argument. At least part of the plaintiff's argument. Your understanding of the argument is that they want to be treated exactly like the casino. In other words, they want to travel parallel to the casino in legal footing. Yes, Your Honor. That is my understanding. And I would like to just define and say the gaming floors of the casino... because I think it's important to remember that full service was available... in the arcades as well as the casinos. But the arcade that has patrons of all ages... wanted to be treated similar to the gaming floors of casinos... that are for ages 21 years of age and older. But yes, that is my understanding of the argument. Thank you. Thank you, Attorney. Thank you. Thank you, Attorney Leronica. If you could please, Lightfoot, you could please mute your audio and video at this time. And Attorney Randazza, if you could please reintroduce yourself on the record again. Your Honors, Mark Randazza again for appellants. My sister, I think, misapprehends. Our point is that we were shut down unconstitutionally. Not simply that we were treated differently than casinos. Mr. Randazza, with all due respect, that's not the issue before us. The pandemic has caused profound changes in our society. But to my knowledge, it has not changed the principles of mootness. And the only question that's before us is whether this dispute is moot. Your Honor, I agree with that. The theory of liability doesn't really matter. Your Honor, I agree with you. But I would say that the pandemic has changed our principles of mootness. Because the town of Portsmouth case, which was written in 2016, was written at a time before the Newsom and Cuomo cases reached the Supreme Court. Newsom and Cuomo both share a feature that this case does not share. In both of those cases, at the time of the hearing, the governor's order was still in effect. And the governor, therefore, had power to change it. And indeed, in each case, had changed it on several occasions. Here, we've got an executive order which has been terminated. The statute that authorized it has been rescinded. Your Honor, that's inaccurate. What authorized it was the 1950 Act. The governor's declaration of emergency, issued on the 10th of March, 2020, declared the state of emergency unilaterally by the governor. There is nothing in the record showing that the legislature approved it. There was no request for legislative approval. No approval, but the governor had stated that it was pursuant to a certain statute. And that statute has been rescinded. But that's not the point. The point is, there is no executive order in effect. And as far as I can tell, no reasonable likelihood, particularly with the rescission of that enabling statute, that any such order will be reimposed. Your Honor, there is no rescission of the enabling statute. The statute was passed in 1950. The statute still remains on the books. The statute has not been repealed. That might be desirable, but that has not happened. This was an executive order pursuant to that statute. And then the governor did, conveniently, in Executive Order 50, change his mind two days after being served with the complaint in this case. Executive Order 69, which is not part of the record, but let's refer to it, is simply the governor saying that the power vested in me that I used in March of 2020 under the 1950 law, I will now use to stop using that power. So the fact that the governor could simply, in 10 minutes, the governor could come on television and say, due to the Delta variant, I am going to declare a new state of emergency, the same exact way he did it in March of 2020, and then issue another unconstitutional decree. There is no extra step. This is exactly on all fours with Cuomo and with Newsom. There is literally not even argument in the record by my sister that this statute was repealed. This is a fact that if I am incorrect about this, I will accept your correction. But I see nothing that says that this 1950 statute was repealed. If the 1950 statute has been repealed, then we have perhaps a very different case. But I see no citation to that happening. And I also don't see how the governor would have the power. That's the time. Statute. Thank you, Counselor. Thank you, Your Honors. That concludes the arguments for today. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the hearing.